JOHN GRIFFITHS v. WHEELER & BARBER.

1. CHATTEL MORTGAGE; *Sufficient Description.* In a chattel mortgage of certain neat cattle and other property the descriptions of the neat cattle were generally correct, except that it described one of such cattle as "dark red," when in fact it was dark red, with some white spots on it; and described another as "light red," when in fact it had some white on its belly, and a little white on its back; and described two others as "two spring heifer calves," when in fact one of them in addition to the description given in the mortgage was a roan heifer with an enlarged knee; but taking the entire descriptions of such cattle, with the inquiries which the mortgage itself would suggest, any person could have ascertained the cattle that were mortgaged; therefore, *held,* that the descriptions are sufficient, and the mortgage itself is valid.

2. REPLEVIN; *Jurisdiction of a Justice.* A justice of the peace has jurisdiction in all actions of replevin where the property in controversy does not exceed one hundred dollars in value. (Justices Code, § 55.) And for the purpose of fixing the jurisdiction of the justice, the value placed upon the property in the replevin affidavit governs. (Justices Code, § 62.) And the justice may render judgment for the full value of the property "in case a return [of the property] cannot be had, *and* for damages for withholding said property, *and* the costs of suit." (Justices Code, § 65.)

*Error from Nemaha District Court.*

ACTION of replevin, brought before a justice of the peace by Charles C. Wheeler and Charles A. Barber, partners as *Wheeler & Barber,* against *John Griffiths,* to recover the possession of certain neat cattle. After trial and judgment, the case was appealed to the district court, where the case was tried at the April Term, 1883, by the court without a jury, and the court made the following findings and conclusions of fact and law:

Griffiths v. Wheeler & Barber.

"CONCLUSIONS OF FACT.

"1. On or about October 11, 1881, John Kauce became indebted to the plaintiffs in the sum of $205, in part for the purchase of the cattle in controversy in this action. Said John Kauce was a tenant of said Charles C. Wheeler, on a farm owned by said Charles C. Wheeler in Marshall county, Kansas, being a quarter-section of land which extended to the eastern boundary line of said Marshall county, and the western boundary line of Nemaha county. Said John Kauce, on or about said date, gave to the plaintiffs, who resided at Marysville, in said Marshall county, his two promissory notes for said indebtedness, due in nine months and one year respectively, and at the same time he executed and delivered to them a chattel mortgage, intending thereby to secure said indebtedness by a lien upon the cattle in controversy in this action, and also certain other personal property, the entire property included in said mortgage being of the value of about $500. The following is a copy of said chattel mortgage, to wit:

'Know all men by these presents that we, John Kauce, and Eliza Kauce, his wife, of the first part, are indebted to C. C. Wheeler and C. A. Barber, of the second part, in the sum of two hundred and five dollars, to be paid as follows: One note nine months after date, we promise to pay to the order of Wheeler & Barber, one hundred dollars, at the Exchange Bank, Marysville, with interest from date at rate of ten per cent. per annum, value received, and hereby waive the benefit of all the laws of the state of Kansas which provide for the stay of execution after judgment.

JOHN KAUCE.
ELIZA KAUCE.

'One note one year after date, same as above.

JOHN KAUCE AND ELIZA KAUCE.'

'Now, therefore, in consideration of such indebtedness and to secure the payment of the same as aforesaid, said parties of the first part do hereby sell, assign, transfer and set over to said parties of the second part the property described in the following schedule, viz.: One large light-red cow, nine years old; one spring bull calf, dark red; one red cow, and one calf, dark red, three years old; one light-red three-year-old heifer; one yearling brindle heifer; one two-year-old bob-tailed heifer; one dark-red cow, six years old; two spring heifer calves; one light-bay horse, three white feet, eight years old, name 'Dick'; one dark-bay mare, six years old, name 'Queen'; one two-horse wagon, Newton make; one Buckeye drill; one Brown corn planter: Provided, however, that if said debt and interest be paid as above specified, this sale and transfer shall be void. The property sold is to remain in possession of said parties of the first part until default be made in the payment of the debt and interest aforesaid, or some part thereof. But in case of a sale or disposal, or attempt to sell or dispose of the same, or a removal of, or attempt to remove the same from Marshall and Nemaha county, and state of Kansas, or an unreasonable depreciation in the value, or if from any other cause the security shall become inadequate, the said parties of the second part may take such property or any part thereof into their own possession, and upon taking said

property into their possession, either in case of default or as above provided, said parties of the second part shall sell the same at public or private sale, and, after satisfying the aforesaid debt and interest thereon, and all necessary and reasonable costs, charges and expenses incurred out of the proceeds of sale, they shall return the surplus to said parties of the first part, or their legal representatives; and if from any cause said property shall fail to satisfy said debt and interest aforesaid, said parties of the first part hereby agree to pay the deficiency. In witness whereof, the said parties of the first part have hereunto set their hands, this 11th day of October, 1881.                                    JOHN KAUCE.

"2. On the back of said instrument an affidavit was indorsed, of which the following is a copy, to wit:

'STATE OF KANSAS, MARSHALL COUNTY, ss.— John Kauce, being first duly sworn, says that he is the lawful owner of property described and included in the within instrument of writing, and that he has full power to sell or mortgage the same and give clear title; that there are no chattel mortgages or liens upon said property.          JOHN KAUCE.

'Subscribed to in my presence and sworn to before me, this 11th day of October, 1881.          [Seal.]          SAMUEL ARNOLD, *Notary Public.*
'(Commission expires November 21, 1881.)

"3. On October 13, 1881, at 10 o'clock A. M., the plaintiffs caused said chattel mortgage (with said affidavit indorsed thereon) to be filed in the office of register of deeds of Marshall county, Kansas, where it has ever since remained on file. And on October 2, 1882, an affidavit for renewal for the amount of $198.50 was indorsed thereon.

"4. The animal described in said mortgage as 'one spring bull calf, dark red,' had some small white spots on him; but except for these, he was dark red. The animal described in said mortgage as 'one light-red three-year-old heifer,' had some white upon her belly and a little upon her back, but her general color was light red. The one of said two animals described in the mortgage as 'two spring heifer calves' which is in controversy in this action, was a roan heifer, which had a broken and enlarged knee. In all other respects the descriptions of all the animals in the mortgage were correct, and said John Kauce had no other animals of the description of those embraced in said mortgage from the time the same was given until the commencement of this action, and he had no cattle during said time other than those included in said mortgage, and their increase.

"5. Said cattle of said John Kauce were kept for the most part upon said farm in Marshall county. There was a corral on said farm in which they were generally kept at night, but in the daytime during the grazing season they were permitted to run out on the lands to the east and southeast, in

Nemaha county, being open and vacant prairie. The cattle ranged upon said lands in Nemaha county much of the time.

"6. On August 11, 1882, the defendant purchased of said John Kauce the cattle in controversy in this action for the sum of $95, and also five spring calves for the sum of $25; and on August 12, 1882, the defendant paid said John Kauce for the same the sum of $120 in full. At the time of said purchase said cattle were grazing in Nemaha county, about three-quarters of a mile from said farm, and the purchase was made in Nemaha county. But the defendant knew the place of residence of said John Kauce to be on said Wheeler farm in Marshall county, and he had known his place of residence to be there ever since the fall of 1881. He had no actual knowledge, however, that said cattle were mortgaged to the plaintiffs, nor to any other person, nor that any other person than John Kauce had any claim thereon, and he had no constructive knowledge thereof except such as may have been imparted by the filing of said chattel mortgage in Marshall county as aforesaid. The price paid for the cattle was a fair one, and the transaction was free from collusion and from any intentional fraud on the part of the defendant. The cattle were to be delivered by said John Kauce to the defendant in Nemaha county on Saturday, August 26, 1882, but he failed to do so.

"7. On Sunday night, August 27, 1882, said John Kauce left said farm in Marshall county and absconded from the county, and his whereabouts have ever since been unknown. He left the cattle in controversy running out on the prairie, and not in charge of any one. On Tuesday or Wednesday following, the defendant was informed of said facts, and also that there was a chattel mortgage on said cattle; and thereupon he went with help and found the cattle in controversy in Nemaha county, about a half-mile east of said Wheeler farm, and he took possession thereof. He found the calves a short distance south of said farm, in Marshall county. He drove said cattle and calves to his farm in Nemaha county, and put them in his inclosure.

"8. The plaintiffs also being informed of the absconding of said John Kauce, set out to obtain said cattle, but were too late. They followed after the defendant, and arrived at his farm only a little while after the cattle had been put into the inclosure, and on the same afternoon. They then demanded said cattle in controversy in this action, but the defendant refused to give them up, and this suit was afterward brought.

"9. The plaintiffs have never had the possession of said cattle since said chattel mortgage was executed to them. It does not appear from the evidence what became of that part of the mortgaged property which is not in controversy in this action. But it does appear that the plaintiffs have only been paid the sum of $10 upon said indebtedness of $205.

"10. At the commencement of this action said bull calf was of the value of $25; said light-red cow of the value of $22; said brindle heifer of the value of $20; said bob-tailed heifer of the value of $20; and said other heifer of the value of $13 — making an aggregate value of $100.

"11. The plaintiffs expended $6.50 necessarily in going after and demanding said cattle from the defendant, and lost one day's time worth $2 in so doing, and the interest of the value of said cattle from the time they were taken by the defendant up to the present time is $4.60 — making in all the sum of $13.10.

"And upon the facts so found the court does find as conclusions of law in this case as follows, viz.:

"1. Said chattel mortgage was not void, but valid as between the plaintiffs and said defendant when the defendant obtained said cattle.

"2. The plaintiffs are entitled to recover said cattle from the defendant, or if return cannot be had, then for the value thereof, to wit, the sum of $100.

"3. And the plaintiffs are entitled to recover the further sum of $13.10 as damages for the unlawful detention of said cattle.

"4. And the plaintiffs are entitled to recover their costs herein from the defendant."

Judgment was accordingly rendered for plaintiffs. *Griffiths* brings the case here.

*Taylor & Bassett,* for plaintiff in error.

*C. T. Mann,* and *Conwell & Clawson,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin, commenced before a justice of the peace by Charles C. Wheeler and Charles A. Barber, partners as Wheeler & Barber, against John Griffiths, to recover the possession of certain

neat cattle of the value of $100.   After trial and judgment in
the justice's court, the case was appealed to the district court,
where the case was tried by the court without a jury, and the
court made certain findings of fact and conclusions of law,
and upon such findings and conclusions rendered judgment
in favor of the plaintiffs and against the defendant for a re-
turn of the property, and for $13.10 damages, and $24.50
costs; but in case a return of the property could not be had,
then in lieu thereof the plaintiffs were adjudged to recover
the sum of $100, the value of the property, and their dam-
ages and costs as aforesaid.   The defendant complains of this
judgment, and as plaintiff in error seeks to have the same
reversed in this court.

It is admitted that the property in controversy once be-
longed to John Kauce, and both · parties claim the same un-
der Kauce.   The plaintiffs claim the same by virtue of a
chattel mortgage, and the defendant claims the same by vir-
tue of a purchase made after the execution of such chattel
mortgage.   And as we think, the only question involved in
the case of any importance is whether this chattel mortgage
is valid or not; and the validity of the mortgage, as both
parties seem to concede, depends entirely upon whether the
description of the property in controversy, as set forth in the
chattel mortgage, is valid or not.   If the description of the
property as set forth in the mortgage is valid, then the
plaintiffs are entitled to recover; but if such description is
not sufficient, then the defendant is entitled to recover.

It appears from the findings of fact as made by the court
below, that at the time of the execution of the chattel mort-
gage, and prior thereto, and for a long time afterward, and
up to and including the time when the defendant purchased
the property, and afterward, John Kauce, the original owner
of the property, resided in Marshall county, on a farm ad-
joining the county line, between the counties of Marshall and
Nemaha; and during all this time the property in contro-
versy, which as we have before stated was neat cattle, was a
part of the time in Marshall county, and a part of the time

in Nemaha county. The cattle grazed upon the open prairie in both counties; but whenever they were at home they were in Marshall county. The defendant knew Kauce; knew where he resided; and knew that he resided in Marshall county. The aforesaid chattel mortgage was executed by John Kauce, and it sufficiently showed upon it face that Kauce claimed to own the mortgaged property; that it was then in his possession, and was to remain in his possession until default; that the same was then within the boundaries of Marshall and Nemaha counties, and was not to be removed therefrom. The mortgage, after its execution, was forthwith deposited in the office of the register of deeds of Marshall county, which was the proper place for it to be deposited. Indeed it was the only place where it could have been deposited or placed for the purpose of giving notice to creditors of the mortgagor and to subsequent purchasers and mortgagees. (Comp. Laws of 1879, ch. 68, art. 2, § 9.) As the mortgage was so deposited, the defendant was bound to take notice of the same and its contents; and if it sufficiently described the property in controversy he was bound to know it. But if it did not sufficiently describe the property, and if he had no other notice that the property was mortgaged, then he might rightfully have purchased the same.

When this mortgage was executed, Kauce had no other neat cattle except those which were intended to be described and included in the mortgage; and he has never since had any neat cattle except those, and their increase; and he has never had any neat cattle, except those intended to be described and included in the mortgage, that would come anywhere near answering to the descriptions given in the chattel mortgage. The cattle involved in the present controversy are only a portion of those included in the chattel mortgage, and they do not include or comprehend any of the increase from those included in the mortgage. The description contained in the mortgage of each of the cattle is not as full and as correct as it might have been, but still it is generally correct; and from such description and such inquiries as the

mortgage itself would have suggested we think that any person might have ascertained, and ought to have ascertained, that the property in controversy was a part of such mortgaged property. The only differences between the descriptions as given in the chattel mortgage and the real description of the cattle, are fully stated in the following findings of the court below:

"4. The animal described in said mortgage as 'one spring bull calf, dark red,' had some small white spots on him; but except for these he was dark red. The animal described in said mortgage as 'one light red three-year-old heifer,' had some white upon her belly, and a little upon her back, but her general color was light red. The one of said two animals described in the mortgage as 'two spring heifer calves,' which is in controversy in this action, was a roan heifer which had a broken and enlarged knee. In all other respects the descriptions of all of the animals in the mortgage were correct, and said John Kauce had no other animals of the description of those embraced in said mortgage from the time the same was given until the commencement of this action, and he had no cattle during said time other than those included in said mortgage, and their increase."

Taking all that is contained in the mortgage, together with all the surrounding circumstances, and viewing the same in the light of the decisions of this court already made, we think the descriptions contained in the mortgage are sufficient, and the mortgage itself is valid. (*Adams v. Hill,* 10 Kas. 627; *Brown v. Holmes,* 13 id. 482; *Shaffer v. Pickrell,* 22 id. 619; *King v. Aultman,* 24 id. 246; *Miller v. Kansas Lumber Co.,* 26 id. 574.)

The plaintiff in error, defendant below, also claims that the court below erred in rendering judgment; but we fail to perceive the error. The property was worth $100. Not only the replevin affidavit, but also the findings of the court below, show that the property was worth just that amount; and this is just the amount for which the court below rendered judgment, upon the condition that a return of the property could not be had. Now a justice of the peace has jurisdiction in all actions of replevin where the property in

controversy does not exceed $100 in value. (Justices Code, § 55.) And for the purpose of fixing the jurisdiction of the justice, the value placed upon the property in the replevin affidavit governs. (Justices Code, § 62.) And the justice may render judgment for the full value of the property "in case a return [of the property] cannot be had, *and* for damages for withholding said property, *and* the costs of suit." (Justices Code, § 65.) Now the district court, in rendering the judgment in this case, followed literally the foregoing sections of the justices code; and therefore no error was committed in rendering the judgment.

The judgment of the court below will be affirmed.

All the Justices concurring.